IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JERMAINE TYRELL PATTON (01),<br><br>    Defendant. | Case No. 16-40113-01-DDC |

**MEMORANDUM AND ORDER**

Defendant Jermaine Tyrell Patton filed a pro se[1] Motion for Compassionate Release (Doc. 94) and a Motion for Sealed Documents (Doc. 99). The government filed Responses to each (Doc. 105, Doc. 106). The court denies Mr. Patton's Motion for Sealed Documents and dismisses his Motion for Compassionate Release. The court explains these rulings, below.

**I.    Background**

Mr. Patton pleaded guilty to aiding and abetting both (1) interfering with commerce by means of robbery (Hobbs Act robbery) and (2) using and carrying a firearm during and in relation to a crime of violence. Doc. 28 at 1–2. On July 26, 2018, the court sentenced Mr. Patton to 168 months' imprisonment and three years of supervised release. Doc. 55 at 2–3. The court also ordered him to pay both restitution and a special assessment. *See id.* at 6. Mr. Patton appealed the court's sentence, and the Circuit affirmed. *United States v. Patton*, 927 F.3d 1087 (10th Cir. 2019).

---

[1]    People in prison "who proceed pro se . . . are entitled to liberal construction of their filings[.]" *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

On June 29, 2021, Mr. Patton filed his Motion for Compassionate Release/Sentence Reduction.  Doc. 94.  To address exhaustion of administrative remedies, the motion explains that Mr. Patton "filed a request to Warden Wingfield FCI Williamsburg on May 21, 2021," and that when Mr. Patton filed his motion with the court on June 29, 2021, "no response ha[d] been given[.]"  *Id.*  His Motion for Compassionate Release argues that he has several medical conditions placing him at risk to contract severe COVID-19 and together, they present an "extraordinary and compelling reason" to reduce his sentence.  *Id.* at 2–4.  The motion also explains that Mr. Patton's mother lives alone with a disability and he wants to help care for her.  *Id.* at 4–5.  The motion argues that the court, even if it isn't inclined to order Mr. Patton's release, should reduce his sentence because the court increased his offense level based on his co-defendant's shooting of a law enforcement officer while attempting to flee.  *Id.* at 7–8.  Mr. Patton argues these enhancements do not accurately reflect his crimes.  *Id.* at 8.  And the motion identifies Mr. Patton's release plans, *id.* at 6, and his lack of serious violations while incarcerated, *id.* at 9.

On July 19, 2021, Mr. Patton also sent a letter to the court about his Motion for Compassionate Release.  Doc. 100.  The letter explains that Mr. Patton was going through relationship troubles when he committed his offenses, and he turned to his "[g]ang buddies, to feel like [he] belonged."  *Id.* at 1.  The letter asserts that Mr. Patton accepts full responsibility for his crimes, but he again argues that the sentencing enhancements treated him unfairly.  *Id.* at 1–3.  And the letter says that Mr. Patton, if released, could take programs, pay his restitution faster, and help and support his mother.  *Id.* at 3.  Mr. Patton closes the letter by assuring the court that he has learned from his mistakes and asks the court to consider his letter "parallel . . . to the sentence guidelines [he] would have received without any enhancements[.]"  *Id.*

Mr. Patton filed another supplement to his motion on August 6, 2021.  Doc. 102.  The supplement informs the court that his maternal grandmother passed away on July 30, 2021, and other members of his family recently passed away as well.  Mr. Patton reassures the court that he has changed and asks the court to release him so he can care for his mother.

The government responded to Mr. Patton's Motion for Compassionate Release on August 30, 2021.  Doc. 106.  This Response argues that Mr. Patton failed to provide evidence that he exhausted his administrative remedies with the Bureau of Prisons (BOP).  *Id.* at 4–5.  And the government argues that Mr. Patton doesn't present extraordinary and compelling reasons for release, and that the § 3553(a) factors don't favor Mr. Patton's release.

Mr. Patton filed his Reply on November 11, 2021.  Doc. 114.  Mr. Patton's Reply asserts that he has exhausted his administrative remedies, but he doesn't have evidence of his request to the warden because the form he used doesn't include a receipt.  *Id.* at 1. Mr. Patton also explains that when he made his compassionate release request in May 2021, he was housed in the Special Housing Unit without access to a copier.  *Id.*  Mr. Patton's Reply also asserts that his health conditions present extraordinary and compelling reasons for release during the COVID-19 pandemic, and he is the only person able to care for his mother.  *Id.* at 1–4.  The Reply included a letter from Mr. Patton's mother, Tina Marie Ketter.  Doc. 114-2.  Ms. Ketter's letter details her struggles in her personal life and with her health.  *Id.* at 1–2.  Ms. Ketter asserts that she needs her son, Mr. Patton, to help take care of her.  *Id.* at 2.

Mr. Patton also submitted a Supplemental Reply on December 15, 2021.  Doc. 115.  It asserts that Mr. Patton asked a warden to help him recover a copy of his May 2021 request for compassionate release but, instead, the warden denied his request for compassionate release.  *Id.* at 1.  Mr. Patton attached a letter from A. Cioli—presumably the warden at USP Thomson—

3

denying Mr. Patton's request. *Id.* at 2. The warden's letter is dated December 10, 2021—more than five months after he filed the motion. *See* Doc. 94 (filed June 29, 2021).

In addition to his Motion for Compassionate Release, Mr. Patton filed a Motion for Sealed Documents on July 19, 2021. Doc. 99. The government responded to the motion. Doc. 105. Mr. Patton did not reply to the government's response, and the time for doing so has passed.

The court has reviewed thoroughly these filings and related documents and now is prepared to rule. But, first, the court recites the governing legal standard.

## II.     Legal Standard

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but [this] rule of finality is subject to a few narrow exceptions. One such exception is contained in [18 U.S.C.] § 3582(c)(1)." *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (citation and internal quotation marks omitted). This exception permits a district court to modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days[2] from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A); *see also Maumau*, 993 F.3d at 830–31 (reviewing § 3582(c)(1)'s history, text, and requirements). Recently, our Circuit held that this exhaustion requirement is a claim-processing rule that the government may waive or forfeit. *United States v. Hemmelgarn*, 15 F.4th 1027, 1030–31 (10th Cir. 2021). The Tenth Circuit has held that it does not view the first

---

[2]     Under § 3582(c)(1)(A), a defendant may file a motion for compassionate release directly with the district court after "the passage of 30 days from the defendant's *unanswered* request to the warden for such relief." *See Maumau*, 993 F.3d at 830 (emphasis added).

step in § 3582(c)(1)(A)—"extraordinary and compelling" reasons—as jurisdictional. *See id.* at 942 n.7 (declining "to read a jurisdictional element into § 3582(c)(1)(A)'s 'extraordinary and compelling reasons' requirement when the statute itself provides no indication (much less a 'clear statement') to that effect").

Apart from the exhaustion requirement, the court applies a three-step analysis to motions filed under § 3582(c)(1)(A).  *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021). The court may grant a motion for reduction of sentence only if "(1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in [18 U.S.C.] § 3553(a), to the extent that they are applicable."  *Id.*  Relief may "be granted only if all three prerequisites are satisfied," and so, "the three steps [can] be considered in any order."  *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021).

Here, the court need not reach the second step of the analysis because the Sentencing Commission has not issued an "applicable policy statement" for defendant-filed compassionate release motions like this one.  *Maumau*, 993 F.3d at 837.  So, "until the Sentencing Commission issues such a policy statement, the second requirement does not apply."  *United States v. Quinn*, No. 10-20129-03-KHV, 2021 WL 3129600, at *2 (D. Kan. July 23, 2021).

### III.  Motion for Compassionate Release (Doc. 94)

Mr. Patton hasn't satisfied the statutory requirement that he exhaust his administrative remedies.  So, the court dismisses his motion without prejudice.  But, even if Mr. Patton properly had exhausted, Mr. Patton's motion fails for two other independently sufficient reasons:  (1) he hasn't shown extraordinary and compelling reasons for his release, and (2) the § 3553(a)

sentencing factors do not favor his release. The court explains these independent conclusions in parts A and B, below.

### A.     Exhaustion

The controlling statute requires prisoners who seek compassionate release to exhaust their administrative remedies with the BOP fully. 18 U.S.C. § 3582(c)(1)(A). To exhaust in this fashion, a person in prison

> must request that the BOP make such a motion on [his] behalf and then either (1) "fully exhaust all administrative rights to appeal a failure of the BOP to bring the motion on [his] behalf'"or (2) wait for thirty days to have passed since the "warden of the [person in prison]'s facility" received [his] request.

*United States v. Johnson*, 849 F. App'x 750, 752 (10th Cir. 2021) (brackets omitted). If the government invokes this exhaustion requirement as a defense, the district court "must enforce" it. *United States v. Gieswein*, No. 21-6056, 2021 WL 4852420, at *2 n.2 (10th Cir. Oct. 19, 2021) (citations omitted); *see also Johnson*, 849 F. App'x at 753 ("In this circuit, . . . § 3582(c)(1)(A)'s exhaustion requirement is mandatory, rather than judicially waivable."); *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017) ("If properly invoked, mandatory claim-processing rules must be enforced[.]"); *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021) (applying *Hamer* to § 3582(c)(1)(A)'s exhaustion requirement).

In his Motion for Compassionate Release, Mr. Patton asserts that he "filed a request to Warden Wingfield [at] FCI Williamsburg on May 21st, 2021," and "as of [the] time of this filing no response has been given[.]" Doc. 94 at 1. Mr. Patton's motion is signed June 23, 2021, and filed with the court on June 29, 2021. *Id.* at 10. But, as the government correctly points out, Mr. Patton fails to provide any evidence that he exhausted his remedies. Doc. 106 at 4–5.

Mr. Patton's Reply asserts that he doesn't have evidence of exhaustion because the "limited privileges in segregation" mean "no receipt [exists] for the inmate who fills out a

6

request[.]" Doc. 114 at 1. Mr. Patton's Reply also asserts that he "has been transferred to USP Thomson . . . where he could not petition [his] previous warden (at FCI Williamsburg)[.]" *Id.* And Mr. Patton filed a Supplemental Reply asserting that he "petitioned the warden" (meaning, presumably, the warden at USP Thomson) to help him "recover a copy of [his] request for compassionate release[.]" Doc. 115 at 1. But, according to Mr. Patton, the warden at USP Thomson construed the request as a new compassionate release request and denied it in a letter dated December 10, 2021. *Id.* at 1, 2.

Ultimately, Mr. Patton hasn't provided any proof of his May 2021 request to FCI Williamsburg.[3] He claims that the May 2021 request catalyzed this lawsuit. So, Mr. Patton's evidence that the warden at USP Thomson denied his compassionate release request in *December 2021* cannot furnish evidence that he exhausted his *May 2021* request.[4] Mr. Patton

---

[3] In his Reply, Mr. Patton notes that the government "couldn't recover evidence or facts" to "prove that exhaustion of remedies didn't occur." Doc. 114 at 1. The problem with this argument, of course, is that it's Mr. Patton who bears the burden to show that Mr. Patton has exhausted his administrative remedies. *See United States v. Pugh*, No. 15-40018-05-DDC, 2020 WL 4501053, at *2 (D. Kan. Aug. 5, 2020); *see also United States v. Dewey*, No. 14-10059-JWB, 2022 WL 1500663, at *2 (D. Kan. May 12, 2022); *United States v. Dial*, No. 17-20068-JAR, 2020 WL 4933537, at *2 (D. Kan. Aug. 24, 2020). The government owes no obligation to prove that Mr. Patton didn't exhaust.

[4] Even if the court believed that December 2021 request could exhaust remedies for a May 2021 motion—it doesn't—Mr. Patton still wouldn't satisfy the exhaustion requirement. Where a warden denies a compassionate release request within 30 days, the statute requires the prisoner to "*fully* exhaust all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [ ] [his] behalf[.]" 18 U.S.C. § 3582(c)(1)(A) (emphasis added). Mr. Patton attaches the USP Thomson warden's denial from December 2021, but he fails to provide any evidence that he appealed that adverse decision. *See* Doc. 115 at 1–2. And the warden's denial letter specifically instructs Mr. Patton that, if he is "dissatisfied with this response, [he] may file an appeal . . . within 20 calendar days[.]" *Id.* at 2. Mr. Patton has provided no evidence that he appealed the warden's December 2021 denial. So, under this scenario, Mr. Patton still hasn't fully exhausted his administrative remedies. *See United States v. Whisenant*, No. 13-20113-01-DDC, 2021 WL 392728, at *2–3 (D. Kan. Feb. 4, 2021) (concluding defendant failed to show lapse or exhaustion where warden denied his request within 30 days and he alleged nothing about exhausting administrative rights to appeal that denial); *see also United States v. Olsson*, No. 13-CR-2051 KWR, 2020 WL 6869979, at *2 (D.N.M. Nov. 23, 2020) (concluding that the court "is precluded from granting [defendant's] request for release" because defendant failed to fully exhaust all administrative rights to appeal after he "received an answer within thirty days by the warden").

7

simply lacks the required proof of exhaustion. *Cf. Hemmelgarn*, 15 F.4th at 1029–30 (concluding defendant had "failed to provide proof that he exhausted his administrative rights as is required under § 3582(c)(1)(A)" where defendant "indicated that he previously filed a motion for compassionate release with the prison's warden" but failed to submit document); *see also United States v. Williams*, 829 F. App'x 138, 140 (7th Cir. 2020) ("The district court correctly denied compassionate release for [defendant] based on his failure to present proof that he had satisfied § 3582(c)(1)(A)'s exhaustion requirement."). Mr. Patton has failed to secure the proper documents. So, the court dismisses Mr. Patton's compassionate release request without prejudice to refiling.

But, if one assumes Mr. Patton had exhausted his administrative remedies, the court denies his compassionate release request for a second, and fully independent reason: His circumstances don't satisfy the legal standard for granting a compassionate release motion. The court examines the merits of the motion, next.

### B.  Extraordinary and Compelling Reasons

At the second step of the compassionate release analysis, the court considers whether Mr. Patton has presented "extraordinary and compelling reasons" warranting a sentence reduction. Mr. Patton's filings assert two extraordinary and compelling reasons supporting compassionate release: (1) his health, which puts him at greater risk for COVID-19 complications, and (2) his disabled mother and the care she requires.

#### 1.  Health

Mr. Patton argues that his health presents extraordinary and compelling reasons during the COVID-19 pandemic because he suffers from hypertension, he's obese, he used to smoke, and he suffers from gastroenterological issues. Doc. 94 at 2–3, 22. He asserts that these

conditions increase his "risk of serious illness or death from COVID-19 or variants." *Id.* at 2. Mr. Patton also asserts that doctors have ordered a colonoscopy but he has yet to receive a colonoscopy despite an urgent need for it. *Id.* at 21.

Our Circuit recently held (albeit in an unpublished opinion) that "'a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction.'" *United States v. McRae*, No. 21-4092, 2022 WL 803978, at *2 (10th Cir. Mar. 17, 2022) (quoting *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021)); *see also United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release"). And it appears that several district courts in our Circuit—including this one—have adhered to this direction from the Circuit. Following *McRae*, these courts have concluded that where defendant has had access to the COVID-19 vaccine, incarceration during the pandemic doesn't suffice, on its own, as an extraordinary and compelling reason for a sentence reduction. *See United States v. Smith*, No. 2:13-cr-00776, 2022 WL 1422197, at *6 (D. Utah May 5, 2022); *United States v. Garcia-Patino*, No. 17-20038-18-DDC, 2022 WL 1223642, at *2 (D. Kan. Apr. 26, 2022); *United States v. Logan*, No. 07-20090-01-KHV, 2022 WL 1102654, at *3 (D. Kan. Apr. 13, 2022); *United States v. Oaks*, No. 18-CR-00470-PAB-11, 2022 WL 1081148, at *2 (D. Colo. Apr. 11, 2022); *United States v. Duran*, No. 1:15-CR-27 TS, 2022 WL 844433, at *1 n.3 (D. Utah Mar. 22, 2022).

Mr. Patton is vaccinated against COVID-19. Doc. 106 at 9; Doc. 114 at 2. Following *McRae*, the court concludes that Mr. Patton's health problems and the related risk of COVID-19 while incarcerated do not present an extraordinary and compelling reason for compassionate

9

release. And his gastroenterological issues and alleged lack of treatment don't present an extraordinary and compelling reason, either. Mr. Patton concedes that he refused an outside medical trip for his gastroenterological issues. Doc. 114 at 2 ("[D]efendant felt the trip would put him at greater risk and exposure so [he] refused the medical trip."). If Mr. Patton's gastroenterological issue isn't extraordinary enough to warrant a trip for diagnosis, it certainly isn't extraordinary enough to warrant compassionate release from a prison sentence following serious felonies offenses. The record shows that BOP is managing Mr. Patton's health conditions effectively. Thus, the court concludes Mr. Patton has failed to present an extraordinary and compelling reason for compassionate release based on his health.

### 2. Caretaker for Mother

Mr. Patton's Motion for Compassionate Release next asserts that his mother's health also provides an extraordinary and compelling reason for compassionate release because he is the only caregiver available. The Federal Sentencing Guidelines specifically mention that "family circumstances" may present an extraordinary and compelling reason for compassionate release. U.S. Sent'g Guidelines § 1B1.13 (U.S. Sent'g Comm'n 2018). The Sentencing Guidelines commentary defines family circumstances as: (1) "The death or incapacitation of the caregiver of the defendant's minor child or minor children" or (2) "The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id.* § 1B1.13 cmt. 1.(C).

Mr. Patton asserts that his mother is disabled, recently divorced, and living alone. Doc. 94 at 4. Mr. Patton thus seeks release to help care and provide for his mother. *Id.* at 5. The government responds that Mr. Patton has failed to "establish[] that he is the *only* family member available to care for his mother," and notes that Mr. Patton's Presentence Investigation Report

10

(PSR) mentions defendant's siblings.  Doc. 106 at 17–18.  Mr. Patton clarifies that his other siblings were adopted, except for one younger sister and she "is financially unable to aide [Mr. Patton's] mother and lives several states away[.]"  Doc. 114 at 3.  Defendant's mother, Tina Marie Ketter, submitted a letter describing her serious health issues and explaining that she needs Mr. Patton badly.  Doc. 114-2 at 2.

The court very much regrets Ms. Ketter's health problems.  And the court also regrets that Mr. Patton's decision to engage in violent criminal conduct led to a lengthy sentence.  But Ms. Ketter's health doesn't provide an extraordinary and compelling reason for Mr. Patton's compassionate release.  Two things lead the court to this conclusion.

*First*, the relevant legal authority doesn't consider caring for parents an extraordinary and compelling reason.  Our Circuit has held that "in any circumstance, caring for aging parents is not grounds for release."  *United States v. Pepper*, 851 F. App'x 890, 891 (10th Cir. 2021).  And the Sentencing Guidelines' definition of family circumstances doesn't encompass caring for a parent.  U.S. Sent'g Guidelines § 1B1.13 cmt. 1.(C)(i) (U.S. Sent'g Comm'n 2018).  Of course, the Sentencing Commission's Guidelines (and their commentary) don't bind the court to a particular outcome, but the court finds this definition of family circumstances useful.  *See United States v. Lopez*, 846 F. App'x 733, 735 (10th Cir. 2021) (affirming district court's finding that family circumstances didn't apply to defendant's father); *see also United States v. Barrio*, No. 21-6103, 2022 WL 898764, at *4 (10th Cir. Mar. 28, 2022) (citing Sentencing Guidelines § 1B1.13 cmt. 1 and noting that these "policy statements guide, but do not confine, the court's analysis of extraordinary and compelling circumstances warranting a sentence reduction").

*Second*, Mr. Patton's own release plan mentions living with his mother only as an option—not an imperative.  Mr. Patton mentions several release plans.  They include:  (1) living

11

with his father or cousins in Kansas, (2) living with his mother in Colorado Springs, Colorado, or (3) living with his fiancée, who currently lives in Utah but may move to Colorado. Doc. 94 at 6. These alternatives somewhat undermine Mr. Patton's assertion that he is the sole caregiver available for his mother. In any event, the court isn't persuaded by Mr. Patton's argument that Ms. Ketter's health presents an extraordinary and compelling reason because, among other things, Mr. Patton is considering living in a different state if released.

### C.   § 3553(a) Factors

Even if Mr. Patton had exhausted his administrative remedies and even if he had presented an extraordinary and compelling reason for compassionate release, his motion nonetheless fails at the third step of the § 3582(c)(1)(A) analysis. Under it, the court, before it may reduce a defendant's term of imprisonment under § 3582(c)(1)(A), must consider whether defendant poses a danger to the community and the other relevant sentencing factors under § 3553(a).[5] 18 U.S.C. § 3582(c)(1)(A). If a proposed modified sentence strays too far from the original sentence, the § 3553(a) factors can't support the sentence reduction, even where a defendant faces extraordinary and compelling circumstances. *See United States v. Pope*, No. 16-10039-1-JTM, 2020 WL 5704270, at *1 (D. Kan. Sept. 24, 2020) ("This court has concluded that compassionate release based on COVID-19 related concerns should be denied where the resulting sentence would materially depart from an appropriate § 3553(a) sentence[.]"); *United States v. Kaufman*, No. 04-40141-1-JTM, 2020 WL 4196467, at *2 (D. Kan. July 21, 2020)

---

[5]   Those factors include: (1) defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a).

("Even when an older inmate faces some serious medical condition, compassionate release should be denied if it would radically alter the appropriate § 3553 sentence.").

The court sentenced Mr. Patton to 168 months in prison.  Doc. 55 at 2.  His projected release date is December 30, 2028.  *See* Jermaine Tyrell Patton (Reg. No. 28455-031) (last visited May 27, 2022), https://www.bop.gov/inmateloc/.  The court declines to reduce Mr. Patton's fourteen-year sentence by more than six years because such a reduced sentence no longer would furnish just punishment, promote respect for our laws, reflect the seriousness of the offense, or deter crime sufficiently.

The immutable facts establish that Mr. Patton committed two serious felony offenses.  He admitted as much, pleading guilty to aiding and abetting (1) interference with commerce by means of robbery (Hobbs Act robbery) and (2) use and carry of a firearm during and in relation to a crime of violence.  Doc. 28 at 1–2.  Mr. Patton jointly agreed to undertake a forced armed robbery, and a firearm was used in that robbery.  Mr. Patton and his associate then sought to escape and elude police.  While trying to escape, his associate shot and nearly killed a Topeka Police detective.  Given these facts, a sentence reduction would fail to reflect the nature and seriousness of Mr. Patton's offense.  It would alter the appropriate sentence radically and no longer provide just punishment for his offense.

Mr. Patton argues that "97–106 months would accurately reflect punishment [agreed] upon by [him] in plea, also it satisfies the U.S.S.G."  Doc. 94 at 8.  This argument reflects Mr. Patton's disagreement with enhancements applied to his sentence.  At sentencing, the court applied two enhancements to Mr. Patton's offense level to reflect the shooting of a police detective, and the Circuit affirmed both enhancements.  *Patton*, 927 F.3d at 1097, 1103.  Mr. Patton's latest filings express that he accepts responsibility for his actions, *see* Doc. 94 at 7, Doc.

13

100 at 1, but he argues for a sentence reduction because he believes the enhancements are unfair to him. Doc. 94 at 7–8 (explaining Mr. Patton "was blindsided by enhancements that didn't reflect the original charges or the plea agreements"); Doc. 100 at 2 ("I was willing to accept that the actions of my codefendant an hour later I had no control of, I was in custody. I couldn't help or stop him. Still I was enhanced the same way he would have been had he been charged in federal court. Is this fair?"). The court applied the enhancements properly, explained its reasons for applying them, and the Circuit affirmed. *See generally Patton*, 927 F.3d 1087. The court isn't persuaded by Mr. Patton's arguments about the enhancements.

In sum, the § 3553(a) factors do not support reducing Mr. Patton's sentence.

### IV. Motion for Sealed Documents (Doc. 99)

Mr. Patton also filed a Motion for Sealed Documents (Doc. 99). It seeks copies of the following documents:

- Arrest Warrant (Doc. 7)
- Information (Doc. 25)
- Bill of Particulars
- Presentence Investigation Report (Doc. 33)
- Statement of Reasons (Doc. 56)

Doc. 99 at 1. Mr. Patton asserts that he "is engaged in seeking several post conviction remedies pro se and these documents are needed and helpful." *Id.*

In response, the government provided Mr. Patton with copies of the Arrest Warrant (Doc. 7) and Information (Doc. 25). Doc. 105 at 5–8. And the government asserted that a bill of particulars doesn't exist because the government "did not file a bill of particulars in this

14

matter[.]" *Id.* at 2. Indeed, the docket in this case reflects no bill of particulars. That takes care of the first three document requests, so the court denies this part of his motion's request as moot.

Mr. Patton's request for his PSR and the Statement of Reasons presents a logistical problem. The government asserts that the court "cannot provide either the [PSR] or the Statement of Reasons to the defendant given that BOP policies do not allow inmates to obtain or possess these documents post sentencing." *Id.* The government correctly references BOP Policy 1351.05, which "prohibit[s] inmates from obtaining and possessing photocopies of their Pre-sentence Reports (PSR) and the Statement of Reasons (SOR) from their Judgment(s)[.]" U.S. Dep't of Jus. Fed. Bureau of Prisons, *Program Statement 1351.05*, *Release of Information* 2 (Sept. 19, 2002), https://www.bop.gov/policy/progstat/1351_005_CN-1.pdf. BOP states that the "purpose of this prohibition is to protect inmates from being coerced by other inmates to produce their PSRs and SORs for illicit purposes." *Id.* People in prison "violating this provision are subject to disciplinary action." *Id.* at 16. And BOP treats "PSRs and SORs received by mail . . . as contraband[.]" *Id.* Respecting the BOP's policy decisions, the court denies Mr. Patton's request for copies of his PSR and SOR.[6]

In sum, the government already has provided Mr. Patton two of the five documents. A third document doesn't exist. And for reasons already explained, the court denies Mr. Patton's

---

[6] The court notes that the policy requires BOP to provide people in prison "reasonable opportunities to access and review their PSRs [and] SORs[.]" U.S. Dep't of Jus. Fed. Bureau of Prisons, *Program Statement 1351.05*, *Release of Information* 17 (Sept. 19, 2002), https://www.bop.gov/policy/progstat/1351_005_CN-1.pdf. People in prison "needing a copy of their PSRs or SORs for filing as an attachment in a court case may obtain, complete, and submit to the court an Inmate Request For Certification or Judicial Notice of Pre-sentence Report and/or Statement of Reasons form (BP-S757.013)." *Id.* The BOP policy requires prisons to make that form "available to inmates in the housing units and law libraries." *Id.*

request for the other two documents. Thus, the court denies Mr. Patton's Motion for Sealed Documents (Doc. 99).

## V.     Conclusion

As explained above, the court dismisses Mr. Patton's Motion for Compassionate Release (Doc. 94) for failure to exhaust. But, even if Mr. Patton had exhausted his administrative remedies, his motion fails on its merits. And it also denies his Motion for Sealed Documents (Doc. 99) for reasons explained here.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Patton's Motion for Compassionate Release (Doc. 94) is dismissed without prejudice.

**IT IS FURTHER ORDERED BY THE COURT** that Mr. Patton's Motion for Sealed Documents (Doc. 99) is denied.

**IT IS SO ORDERED.**

**Dated this 14th day of June, 2022, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**